# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMMITTEE TO DEFEND THE PRESIDENT, | ) ) ) ) |  |
| Plaintiff, | ) ) | Civ. No. 18-888 (RDM) |
| v. | ) ) |  |
| FEDERAL ELECTION COMMISSION, | ) ) | MOTION TO DISMISS |
| Defendant. | ) ) |  |

## FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant Federal Election Commission ("Commission") hereby moves to dismiss plaintiff's Complaint challenging the Commission's alleged failure to act upon an administrative complaint under the Federal Election Campaign Act, 52 U.S.C. § 30109(a)(8)(A).  Plaintiff lacks Article III standing because it has failed to allege a concrete and particularized injury.  A supporting memorandum of points and authorities and a proposed order accompany this motion.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

/s/ *Seth Nesin*
Seth Nesin
Attorney
snesin@fec.gov

June 22, 2018

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC  20463
(202) 694-1650

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMMITTEE TO DEFEND THE PRESIDENT, | ) ) ) ) | |
| Plaintiff, | ) ) | Civ. No. 18-888 (RDM) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Seth Nesin
Attorney
snesin@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

June 22, 2018

# TABLE OF CONTENTS

*Page*

I.     BACKGROUND ........................................................................................2

    A.     The Federal Election Commission................................................2

    B.     FECA Imposes Reporting Obligations and Restrictions on the Making of Contributions...................................................................................2

    C.     FECA's Administrative Enforcement Process and Judicial Review Standard .......................................................................................4

    D.     Plaintiff CDP's Claims in This Matter...........................................5

II.     THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE CDP LACKS ARTICLE III STANDING .................................6

    A.     Standard of Review......................................................................6

    B.     CDP's Effort to Compel the FEC to Determine That Other Parties Violated the Law Does Not Present a Legally Cognizable Injury to CDP........9

    C.     CDP Does Not and Cannot Claim Standing Due to Informational Injury .......12

        1.     CDP's Administrative Complaint Seeks a Legal Determination, Not to Uncover New Factual Information ...........................................14

        2.     To the Extent CDP Does Seek Information, It Fails to Show That Such Information Would Be Useful in Its Voting......................16

    D.     CDP Lacks Standing for the Additional Reason That Its Programmatic Activities Are Not Directly and Adversely Affected by the Challenged Dismissal Decision.........................................................................18

III.     CONCLUSION.......................................................................................20

# TABLE OF AUTHORITIES

*Cases*                                                                                   *Page*

*21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192 (D.C. Cir. 2003) ...........................6

*Akins v. FEC*, 101 F.3d 731 (D.C. Cir. 1996)...........................................................................19

*All. for Democracy v. FEC*, 362 F. Supp. 2d 138 (D.D.C. 2005)...............................12, 13, 14

*All. for Democracy v. FEC*, 335 F. Supp. 2d 39 (D.D.C. 2004) ................................. 12, 16-17

*Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84 (D.D.C. 2000)..................................................12

*Am. Legal Found. v. FCC*, 808 F.2d 84 (D.C. Cir. 1987)...........................................................8

*Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496 (D.C. Cir. 1994) ............................... 12-13

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015),
    *cert. denied*, 136 S. Ct. 900 (2016)....................................................................................6, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................7

*ASPCA v. Feld Entm't, Inc.*, 659 F.3d 13 (D.C. Cir. 2011) ......................................................13

*Baker v. Carr*, 369 U.S. 186 (1962)...........................................................................................8

*Campaign Legal Center v. FEC*, 245 F. Supp. 3d 119 (D.D.C. 2017) .....................................15

*Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011)....................................................................5

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
    267 F. Supp. 3d 50 (D.D.C. 2017)................................................................... 9-10, 13

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
    799 F. Supp. 2d 78 (D.D.C. 2011)...................................................................................15

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
    475 F.3d 337 (D.C. Cir. 2007).....................................................................................15, 17

*Citizens for Responsibility and Ethics in Wash. v. FEC*,
    401 F. Supp. 2d 115 (D.D.C. 2005).........................................................................17, 19, 20

*Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of the Treasury, IRS*,
    21 F. Supp. 3d 25 (D.D.C. 2014)........................................................................................13

*Citizens United v. FEC*, 558 U.S. 310 (2010)........................................................................20

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ..................7, 9, 10, 11, 12, 16, 17, 19

*Diamond v. Charles*, 476 U.S. 54 (1986) ............................................................................19

*FEC v. Akins*, 524 U.S. 11 (1998).................................................................. 13, 16, 17-18, 19

*FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) ............................5

*FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986) ....................................................................5

*Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22 (D.D.C. 2006) ......................7

*Freedom Republicans, Inc. v. FEC*, 13 F.3d 412 (D.C. Cir. 1994) ..........................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)..............7

*FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215 (1990) ............................................................6, 7

*Gill v. Whitford*, No 16-1611, 2018 WL 3013807 (U.S. June 18, 2018)............................8, 10

*Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794 (D.C. Cir. 1987)............................................19

*Herron for Congr. v. FEC*, 903 F. Supp. 2d 9 (D.D.C. 2012) ................................................7, 9

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) .........................................19

*In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719,
   1984 WL 148396 (D.C. Cir. Oct. 24, 1984)........................................................................5

*Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003) ..........................10, 11, 12, 14

*Lance v. Coffman*, 549 U.S. 437 (2009) ...............................................................................8

*Linda R.S. v. Richard D. and Texas*, 410 U.S. 614 (1973) ....................................................7-8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)........................................................7, 9, 10, 12

*McConnell v. FEC*, 540 U.S. 93 (2003)...............................................................................20

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936)...................................7

*Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428 (D.C. Cir. 1995)........................19

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ....................................................19

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................................................9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ...............................................................8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982).............................................................................................................7

*Vroom v. FEC*, 951 F. Supp. 2d 175 (D.D.C. 2013)........................................................10, 13

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................................8

*Wertheimer v. FEC*, 268 F.3d 1070 (D.C. Cir. 2001)..........................................................10, 13

*Zivotofsky v. Sec'y of State*, 444 F.3d 614 (D.C. Cir. 2006)....................................................13

### Statutes and Regulations

52 U.S.C. § 30104...................................................................................................................2

52 U.S.C. § 30106...................................................................................................................2

52 U.S.C. § 30106(b)(1) .........................................................................................................2

52 U.S.C. § 30106(c) ..............................................................................................................4

52 U.S.C. § 30107...................................................................................................................2

52 U.S.C. § 30109(a)(1)......................................................................................................2, 4

52 U.S.C. § 30109(a)(2)......................................................................................................2, 4

52 U.S.C. § 30109(a)(4)(A)(i).................................................................................................4

52 U.S.C. § 30109(a)(6)...........................................................................................................2

52 U.S.C. § 30109(a)(6)(A)......................................................................................................4

52 U.S.C. § 30109(a)(8)..............................................................................................11, 12, 16

52 U.S.C. § 30109(a)(8)(A) .......................................................................................1, 4, 5, 6, 8, 11

52 U.S.C. § 30109(a)(8)(C) .....................................................................................................5

52 U.S.C. § 30109(a)(12).........................................................................................................4

52 U.S.C. § 30116(a) ...............................................................................................................2

52 U.S.C. § 30116(a)(1)(B) ...................................................................................2

52 U.S.C. § 30116(a)(2)(A) ...................................................................................3

52 U.S.C. § 30116(a)(7)(B) ...................................................................................3

52 U.S.C. § 30116(a)(8) .........................................................................................3

52 U.S.C. § 30116(a)(9) .........................................................................................2

52 U.S.C. § 30116(d) ..............................................................................................3

52 U.S.C. § 30118 ...................................................................................................2

52 U.S.C. § 30119 ...................................................................................................2

52 U.S.C. § 30121 ...................................................................................................2

52 U.S.C. § 30122 ...................................................................................................4

11 C.F.R. § 102.6 ....................................................................................................3

11 C.F.R. § 102.17(a) .............................................................................................3

11 C.F.R. § 110.1(c)(1) ..........................................................................................2

11 C.F.R. § 110.6 ....................................................................................................3

11 C.F.R. § 111.4 ....................................................................................................4

### *Miscellaneous*

FEC, Price Index Adjustments for Contribution and Expenditure Limitations and
  Lobbyist Bundling Disclosure Threshold, 82 Fed. Reg. 10904 (Feb. 16, 2017) ...............2

Federal Rule of Civil Procedure 12(b)(1) ........................................................1, 6

Plaintiff Committee to Defend the President ("CDP") lacks Article III standing to bring this suit seeking relief for the alleged failure of defendant Federal Election Commission ("Commission" or "FEC") to timely act on CDP's administrative complaint under the Federal Election Campaign Act ("FECA"). According to the court complaint, CDP filed an administrative complaint with the FEC in December 2017 alleging that a large number of contributions made to a joint fundraising committee were unlawfully funneled through many other political committees and ultimately to Hillary for America, the authorized committee for Hillary Clinton's 2016 Presidential campaign. (Verified Compl. (Docket No. 1) ("Compl.") ¶¶ 18-33.) In this case filed just four months after the administrative complaint, CDP asserts that the Commission itself has unlawfully failed to act on or delayed in handling the administrative complaint in violation of 52 U.S.C. § 30109(a)(8)(A). (Compl. ¶¶ 43-48.)

CDP has no Article III standing because it has failed to establish any concrete and particularized injury. In particular, CDP cannot show any informational injury because a mere desire for a determination by the FEC that the administrative respondents violated provisions of FECA is insufficient. CDP does not claim that the alleged unlawful funneling of contributions here resulted in a failure to disclose any particular information, much less any information whose absence harms CDP in voting, as required. Rather, CDP merely alleges that information that has already been reported to the FEC should have been characterized differently or submitted by additional reporting entities. Indeed, CDP already knows the nature and source of the contributions about which it complains because of that past reporting . Nor does CDP claim any specific injury to its programmatic activities. Because a generalized interest in seeing federal law enforced is insufficient to establish Article III standing, CDP's suit must be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I.      BACKGROUND

### A.      The Federal Election Commission

The FEC is a six-member independent agency of the United States government with exclusive jurisdiction to administer, interpret, and civilly enforce FECA.  *See generally* 52 U.S.C. §§ 30106-07.  Congress authorized the Commission, *inter alia*, to investigate possible violations of FECA, *id.* § 30109(a)(1)-(2), and granted the Commission exclusive jurisdiction to initiate civil enforcement actions for violations of FECA in the United States district courts, *id.* §§ 30106(b)(1), 30109(a)(6).

### B.      FECA Imposes Reporting Obligations and Restrictions on the Making of Contributions

FECA contains certain requirements to regulate the financing of federal election campaigns.  In particular, it generally requires federal candidates, political parties, and political committees to disclose publicly the amounts they spend and receive by filing reports with the Commission.  *See* 52 U.S.C. § 30104.

FECA also limits the dollar amounts and permissible sources of contributions such persons may contribute and receive.  52 U.S.C. §§ 30116(a), 30118-19, 30121.  For example, a person can only contribute $33,900 per year to a national party committee like the Democratic National Committee ("DNC").[1]  *See* 52 U.S.C. § 30116(a)(1)(B) (setting a limit of $25,000, to be indexed for inflation); 11 C.F.R. § 110.1(c)(1) (describing how the contribution limit is indexed for inflation); FEC, Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold, 82 Fed. Reg. 10904 (Feb. 16, 2017) (establishing the

---

[1]      Contributors can also lawfully contribute additional funds to segregated accounts established by national party committees for certain specific uses, 52 U.S.C. § 30116(a)(9), but those accounts are not at issue in this case.

2

inflation-adjusted contribution limits for the current election cycle).  However, the DNC can only contribute $5,000 per election to a particular federal candidate.  52 U.S.C. § 30116(a)(2)(A).

Expenditures made by a person in coordination with a particular candidate are generally considered in-kind contributions to that campaign, and they are therefore limited in the same way as direct monetary contributions, because the campaign receives the same benefit from having money spent at its direction as it would by having money contributed to it directly.  52 U.S.C. § 30116(a)(7)(B).  National political parties like the DNC are permitted to make an additional amount of coordinated expenditures in conjunction with a campaign.  52 U.S.C. § 30116(d).

National party committees and associated state party committees may also transfer funds to one another without limitation.  11 C.F.R. § 102.6.  Political committees, including national and state party committees, are also permitted to establish a joint fundraising committee that enables a contributor to make a single contribution to the joint committee that is then divided into contributions to the member political committees that do not exceed the statutory contribution limits.  11 C.F.R. § 102.17(a).  For example, a joint committee made up of a candidate committee, a national party committee, and a state party committee can accept contributions up to the limit for all three of those entities combined and then disburse lawfully-sized contributions to each of those recipient committees.

If a contribution is made to an intermediary, such as a joint fundraising committee or a political party committee, but is earmarked or otherwise directed to a particular candidate, that contribution is treated as a contribution made directly to the candidate for the purpose of the contribution limits, and therefore the intermediary is required to include both the original source of the money and the final recipient of that money in its disclosure reports.  52 U.S.C. § 30116(a)(8); 11 C.F.R. § 110.6.  In addition, a person is not permitted to make a contribution in

3

the name of another, nor to knowingly allow his or her name to be used for another person's

contribution, nor to knowingly accept contributions that have been made in the name of another.

52 U.S.C. § 30122.

   C.   **FECA's Administrative Enforcement Process and Judicial Review Standard**

   FECA permits any person to file an administrative complaint with the Commission

alleging a violation. 52 U.S.C. § 30109(a)(1); *see also* 11 C.F.R. § 111.4. After reviewing the

complaint and any response filed by the respondent whose conduct is at issue, the Commission

considers whether there is "reason to believe" that FECA has been violated. 52 U.S.C.

§ 30109(a)(2). If at least four of the FEC's Commissioners vote to find such reason to believe,

the Commission may investigate the alleged violation; otherwise, the Commission dismisses the

administrative complaint. *Id.* §§ 30106(c), 30109(a)(2). Any administrative investigation under

this provision is confidential until the administrative process is complete. *Id*. § 30109(a)(12).

   If an investigation is conducted, the FEC must then determine whether there is "probable

cause" to believe that FECA has been violated. Like a reason-to-believe finding, a determination

to find probable cause to believe that a FECA violation has occurred requires an affirmative vote

of at least four Commissioners. 52 U.S.C. §§ 30106(c), 30109(a)(4)(A)(i). If the FEC makes

such a determination, the agency is statutorily required to attempt to remedy the apparent

violation informally and attempt to reach a conciliation agreement with the respondent. *Id*.

§ 30109(a)(4)(A)(i). If the Commission is unable to reach a conciliation agreement, FECA

authorizes the agency to institute a *de novo* civil enforcement action in federal district court. *Id.*

§ 30109(a)(6)(A). Entering into a conciliation agreement or instituting a civil action requires an

affirmative vote of at least four Commissioners. *Id.* §§ 30106(c), 30109(a)(6)(A).

   Administrative complainants may challenge the FEC's handling of their complaints in

two limited situations. *See* 52 U.S.C. § 30109(a)(8)(A). First, a party who has filed an

administrative complaint may sue the Commission in the event of "a failure of the Commission to act on [the administrative] complaint during the 120-day period beginning on the date the complaint is filed." *Id.* This 120-day period is a jurisdictional threshold before which suit may not be brought, not a timetable within which the Commission must resolve an administrative complaint. *See, e.g.*, *FEC v. Rose*, 806 F.2d 1081, 1092 (D.C. Cir. 1986). The second situation in which an administrative complainant may file suit is where the Commission decides to dismiss the complaint. In that event, FECA allows the complainant to challenge the dismissal in court. 52 U.S.C. § 30109(a)(8)(A).

If a court finds that a Commission dismissal or failure to act was "contrary to law," it may order the Commission to conform to the court's decision within 30 days. 52 U.S.C. § 30109(a)(8)(C); *see In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24, 1984) (per curiam); *Rose*, 806 F.2d at 1084. If the Commission fails to conform within that time period, the administrative complainant may bring a civil action to remedy the violation alleged in the administrative complaint. 52 U.S.C. § 30109(a)(8)(C); *see FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985).

### D.     Plaintiff CDP's Claims in This Matter

Plaintiff's court complaint alleges that on December 15, 2017, CDP filed its administrative complaint with the FEC. (Compl. ¶ 12.) CDP states that it is a "non-connected hybrid PAC." (Compl. ¶ 10.) A "hybrid" political committee is one that can make contributions but also has a separate account with which to finance independent expenditures using funds raised in unlimited amounts from permitted sources. *See generally Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011). CDP states that its administrative complaint alleged that the administrative respondents unlawfully took $84 million in contributions made to Hillary Victory Fund, a joint fundraising committee, and funneled those contributions through many Democratic

state parties to the DNC, after which the funds were ultimately directed to, controlled by, or

otherwise used to benefit Hillary for America, the authorized committee for Hillary Clinton's

2016 Presidential campaign, including through coordinated expenditures.  (Compl. ¶¶ 18-33.)

On April 16, 2018, the first work day falling 120 days after CDP filed its administrative

complaint, CDP filed this suit seeking declaratory and injunctive relief against the FEC.  Plaintiff

asks the Court to declare that the FEC's failure to act on its administrative complaint within 120

days was contrary to law under 52 U.S.C. § 30109(a)(8)(A).  (Compl. ¶¶ 43-48.)  Plaintiff also

asks the Court to order the FEC to vote within thirty days after the Court's order on whether

there is reason to believe that the administrative respondents have violated FECA.  (Compl.,

Prayer for Relief ¶ 2.)

## II.     THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) BECAUSE CDP LACKS ARTICLE III STANDING

### A.     Standard of Review

"Article III, section 2 of the Constitution limits federal courts to deciding actual ongoing

controversies."  *21st Century Telesis Joint Venture v. FCC,* 318 F.3d 192, 198 (D.C. Cir. 2003)

(internal quotation marks and citations omitted).  There is no such controversy when a plaintiff

lacks standing.  Plaintiff CDP bears the burden of establishing this Court's subject matter

jurisdiction, including showing that it has constitutional standing.  *See Arpaio v. Obama*, 797

F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900 (2016).  "[I]t is the burden of the party

who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that

he is a proper party to invoke judicial resolution of the dispute."  *FW/PBS, Inc. v. City of Dall.*,

493 U.S. 215, 231 (1990) (citations and internal quotation marks omitted).

To survive the FEC's motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(1), the judicial complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim [of standing] that is plausible on its face.'" *Arpaio*, 797 F.3d at 19 (alteration in original)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff "must allege in his pleading

the facts essential to show jurisdiction," *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298

U.S. 178, 189 (1936), and "the necessary factual predicate may not be gleaned from the briefs

and arguments," *FW/PBS*, 493 U.S. at 235 (internal quotation marks omitted).  However, this

Court "may look beyond the allegations contained in the complaint" to "materials outside the

pleadings" to determine whether a plaintiff can show standing.  *Flores ex rel. J.F. v. District of

Columbia*, 437 F. Supp. 2d 22, 28-29 (D.D.C. 2006) (internal quotation marks omitted).

Although the elements of standing cannot be "reduced to a one-sentence or one-

paragraph definition," *Valley Forge Christian Coll. v. Ams. United for Separation of Church and

State, Inc.,* 454 U.S. 464, 475 (1982), CDP must show a reasonable chance of "obtaining a

tangible benefit from winning," *Herron for Congress v. FEC,* 903 F. Supp. 2d 9, 16 (D.D.C.

2012).  To demonstrate Article III standing, a plaintiff must specifically establish that: "(1) [the

plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

(TOC), Inc.,* 528 U.S. 167, 180-181 (2000) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-

561 (1992)).  Particularized means that "the injury must affect the plaintiff in a personal and

individual way." *Id.* at 560 n.1.  And when, as here, "a plaintiff's asserted injury arises from the

government's allegedly unlawful regulation (or lack of regulation) of *someone else*," standing is

"substantially more difficult" to establish.  *Id.* at 562.  *Accord Common Cause v. FEC*, 108 F.3d

413, 417 (D.C. Cir. 1997); *see also Linda R.S. v. Richard D. and Texas*, 410 U.S. 614, 619

(1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")  Standing "focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Am. Legal Found. v. FCC,* 808 F.2d 84, 88 (D.C. Cir. 1987) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).  Thus, courts "may not entertain suits alleging generalized grievances that agencies have failed to adhere to the law."  *Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 415 (D.C. Cir. 1994).  A plaintiff must demonstrate "that he has 'a personal stake in the outcome,' . . . distinct from a 'generally available grievance about government.'"  *Gill v. Whitford*, No 16-1611, 2018 WL 3013807, at *4 (U.S. June 18, 2018) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962) and *Lance v. Coffman*, 549 U.S. 437, 439 (2009)).

Furthermore, Article III standing is a constitutional requirement that cannot be altered by Congress.  Despite the fact that Congress passed section 30109(a)(8)(A)'s failure to act provision, "[i]t makes no difference that the procedural right has been accorded by Congress." *Summers v. Earth Island Inst.,* 555 U.S. 488, 497 (2009).  Although passage of such a right "can loosen the strictures of the redressability prong" of the standing inquiry, "the requirement of injury in fact is a hard floor of Article III jurisdiction *that cannot be removed by statute*."  *Id.* (emphasis added).  Plaintiffs bringing citizen suits must show that they are injured "in a concrete and personal way"; actions that seek "to vindicate the public's nonconcrete interest in the proper administration of the laws" which are "at the behest of Congress" but without "any showing of concrete injury" would "exceed Article III's limitations."  *Id.* (internal quotations omitted). Thus, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III

standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

> **B.    CDP's Effort to Compel the FEC to Determine That Other Parties Violated the Law Does Not Present a Legally Cognizable Injury to CDP**

Plaintiff CDP cannot establish Article III standing because the only purported injury it has alleged is a generalized desire to see the FEC apply the law against others.  CDP fails to show that it has suffered any concrete or particularized injury from the allegedly illegal activity by the administrative respondents CDP has identified.  Rather, CDP simply wants this Court to compel the FEC to enforce the law against the alleged violators.  Such concerns cannot be the basis for standing because there is no "justiciable interest in having the Executive Branch act in a lawful manner." *Common Cause*, 108 F.3d at 419.

CDP's court complaint makes no effort to show a connection between CDP and the illegal activity alleged in its administrative complaint, despite the jurisdictional requirement that a complaint must include such information.  *See supra* Part II.A.  CDP simply describes itself as a "non-connected hybrid PAC headquartered in Alexandria, Virginia" that "is aggrieved by the Commissions' [sic] failure to act on its Administrative Complaint." (Compl. ¶¶ 10, 47.)  CDP has entirely failed, however, to allege any discrete injury that affects CDP "in a personal and individual way." *Lujan,* 504 U.S. at 560 n.1.  The court complaint does not explain what CDP does or how its objectives are hindered by the FEC's alleged failure to act in this matter.  This is not a situation where a plaintiff asserts a conjectural or hypothetical injury-in-fact; here, CDP's court complaint makes no allegation at all that it has suffered any injury, and thus CDP cannot obtain any "tangible benefit from winning" this suit.  *Herron*, 903 F. Supp. 2d at 16; *see also Citizens for Responsibility and Ethics in Wash. ("CREW") v. FEC*, 267 F. Supp. 3d 50, 53

(D.D.C. 2017) ("easily" dismissing claims because plaintiffs "have not alleged any injury in fact arising from [the alleged wrongdoing]").

What CDP does seek is "a legal conclusion that carries certain law enforcement consequences" for others. *Wertheimer v. FEC,* 268 F.3d 1070, 1075 (D.C. Cir. 2001).  But "[w]hile 'Congress can create a legal right . . . the interference with which will create an Article III injury,' . . . Congress cannot . . . create standing by conferring 'upon *all* persons . . . an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law.'" *Common Cause,* 108 F.3d at 418 (quoting *Lujan*, 504 U.S. at 573) (emphasis in original, internal citation omitted).  CDP's court complaint seeks only to have the FEC pursue the administrative respondents.  That is not enough to establish standing.  "The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 2018 WL 3013807, at *15.

Moreover, as the D.C. Circuit has confirmed, a plaintiff cannot "establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of [FECA] has occurred." *Common Cause*, 108 F.3d at 418 (explaining that such a holding "would be tantamount to recognizing a justiciable interest in the enforcement of the law").  "[T]he government's alleged failure to 'disclose' that certain conduct is illegal by itself does not give rise to a constitutionally cognizable injury." *Wertheimer,* 268 F.3d at 1074; *see also Judicial Watch, Inc. v. FEC,* 293 F. Supp. 2d 41, 46 (D.D.C. 2003) (stating that "an injury that occurs when a person is deprived of information that a law has been violated" is not legally cognizable); *Vroom v. FEC*, 951 F. Supp. 2d 175, 178-79 (D.D.C. 2013).  In sum, what a plaintiff in such cases really "desires is for the Commission to 'get the bad guys,' rather than disclose information.  [Plaintiff] has no standing to sue for such relief." *Common Cause*, 108 F.3d at 418.

The fact that this case involves the Commission's alleged failure to act on an administrative complaint rather than the dismissal of an administrative complaint does not change the analysis of whether CDP has standing.  In *Judicial Watch*, 293 F. Supp. 2d 41, plaintiffs brought suit against the Commission pursuant to the predecessor to section 30109(a)(8), alleging that the agency had failed to timely respond to or investigate an administrative complaint within 120 days.  Addressing one plaintiff's "claim that the Commission's delay in responding to his claim is, in and of itself, an injury in fact . . . separate from informational injury," the court found "no basis in the law for this position."  *Id*. at 48.  Noting that the claim amounted to an assertion that the FEC's "delinquency in acting on [the administrative] complaint deprived [plaintiff] of the benefit of FECA's timetable for processing complaints," *id*., the court evaluated the claim in light of the D.C. Circuit's guidance in *Common Cause*, 108 F.3d at 418-19, in which "a similar situation was presented," *Judicial Watch*, 293 F. Supp. 2d at 48.  The *Common Cause* plaintiff had claimed that the FEC's failure to provide "a prompt and lawful resolution of the complaint" had deprived the plaintiff of "a statutorily promised benefit that is personal to the complainant," but the D.C. Circuit rejected that argument for standing.  *Id*.  "The [D.C. Circuit] made clear that while the FEC's failure [to] act within the 120-day period of [section 30109(a)(8)(A)] conferred *a right to sue*, it did not also confer standing." *Judicial Watch*, 293 F. Supp. 2d at 48 (emphasis in original).  Instead, the provision "confers a right to sue upon parties *who otherwise already have standing*." *Id*. (quoting *Common Cause*, 108 F. 3d at 419) (emphasis added by *Judicial Watch*).  Applying *Common Cause,* the *Judicial Watch* court thus concluded that the plaintiff before it had presented only a "procedural injury" and that an administrative complainant could not "establish standing merely by asserting

that the FEC failed to process its complaint in accordance with law." *Id.* (quoting *Common Cause*, 108 F.3d at 419).

Later cases from this District that address standing to bring delay suits pursuant to section 30109(a)(8) reflect agreement with the analysis in *Judicial Watch*. In *Alliance for Democracy v. FEC*, 335 F. Supp. 2d 39 (D.D.C. 2004), the court held, *inter alia*, that plaintiffs had failed to establish informational injury sufficient to support standing for claims that the FEC had failed to act on their administrative complaint. The court added that "under Article III, it is not enough for [a plaintiff] to allege that it was injured because the Commission unlawfully delayed the investigation; plaintiffs must show a 'discrete injury flowing from' such alleged delay." *Id.* at 48 (citing *Common Cause*, 108 F.3d at 418 (quoting *Lujan*)). And in the later dismissal action related to the 2004 *Alliance for Democracy* decision, the court relied heavily on the *Judicial Watch* analysis in finding that a lack of informational injury precluded standing to challenge the dismissal of an administrative complaint, showing that the injury analysis is in fact comparable in the delay and dismissal contexts. *All. for Democracy v. FEC*, 362 F. Supp. 2d 138, 147-49 (D.D.C. 2005). Whether the FEC is not pursuing administrative respondents due to alleged delay or dismissal, the claimants' alleged injury is still rooted in the same thing.

In sum, even though delay suits are authorized by FECA, the cases above make clear that CDP cannot argue that an allegation of a failure to act under section 30109(a)(8) alone gives it standing. CDP must instead show how the Commission's alleged delay has caused particularized injury to CDP's interests. But CDP has failed to do so.

### C.    CDP Does Not and Cannot Claim Standing Due to Informational Injury

An Article III injury can arise when a statute has "'explicitly created a right to information,'" *Am. Farm Bureau v. EPA,* 121 F. Supp. 2d 84, 97 (D.D.C. 2000) (quoting *Animal*

*Legal Def. Fund, Inc. v. Espy,* 23 F.3d 496, 502 (D.C. Cir. 1994)), but CDP cannot establish

standing on that basis.  "For a plaintiff to successfully claim standing based on an informational

injury, he must allege that he is directly deprived of information that must be disclosed under a

statute."  *CREW v. U.S. Dep't of the Treasury, IRS*, 21 F. Supp. 3d 25, 32 (D.D.C. 2014); *ASPCA

v. Feld Entm't, Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011) ("For purposes of informational standing, a

plaintiff 'is injured-in-fact . . . because he did not get what the statute entitled him to receive.'")

(quoting *Zivotofsky v. Sec'y of State,* 444 F.3d 614, 618 (D.C. Cir. 2006)).  However, "[n]othing

in the FECA requires that information concerning a violation of the Act as such be disclosed to

the public."  *All. for Democracy*, 362 F. Supp. 2d at 148.  As explained above, courts in

comparable FEC cases have repeatedly emphasized that plaintiffs seeking only determinations of

illegality lack standing to maintain their claims.  *See, e.g.*, *Wertheimer,* 268 F.3d at 1075

(holding that plaintiffs lacked standing to seek a legal determination that certain transactions

constitute coordinated expenditures); *CREW*, 267 F. Supp. 3d at 54 (holding that advocacy group

lacked standing to challenge FEC dismissal of alleged violation of FECA's "prohibition on pass-

through contributions" because "nothing in the statute or regulatory regime" would have required

the alleged violator to disclose information); *Vroom*, 951 F. Supp. 2d at 178-79 (holding that

plaintiff lacked standing to seek a legal determination that certain political committees were

affiliated).  And such legal determinations are what CDP seeks in this case.

Alleged violations of FECA's reporting violations can in some cases provide an

informational injury sufficient to support standing, *see, e.g.*, *FEC v. Akins*, 524 U.S. 11 (1998),

and CDP does allege reporting violations.  But they amount to claims that already disclosed

contributions were unlawful or should have been reported in a different way, not that any such

contributions failed to be disclosed.  CDP has already received information about the specific

contributions made to and by the alleged administrative respondents directly from the mandatory

FEC disclosure reports filed by those administrative respondents.  (*See* Compl. ¶¶ 18-25.)  "[N]o

informational injury has been sustained here because the information required to be disclosed by

the statute has already been disclosed."  *All. for Democracy,* 362 F. Supp. 2d at 147.

### 1. CDP's Administrative Complaint Seeks a Legal Determination, Not to Uncover New Factual Information

CDP does not claim that an FEC investigation in this matter would provide it with any

additional factual information that could support standing.  CDP states that the administrative

complaint alleges that the Hillary Victory Fund, a joint fundraising committee, obtained

contributions that were to be divided amongst Hillary for America, the DNC, and various state

party committees.  CDP further alleges that all of those contributions ultimately ended up under

the control of Hillary for America.  According to CDP, this shifting of money amongst the

various committees violated FECA prohibitions against excessive contributions, illegal

earmarking, and contributions in the name of another.  (*See* Compl. ¶¶ 27-29, 32.)  CDP also

alleges that some entities violated reporting requirements by failing to correctly identify either

the true contributor or true recipient of some of the contributions.  (*See* Compl. ¶¶ 30-31, 33.)

But CDP's administrative complaint already identifies the specific transfers of money amongst

the Hillary Victory Fund, the state Democratic parties, and the DNC, based on reporting to the

FEC that is publicly available.  (*See* Compl. ¶¶ 18-25.)  Thus, even if the Commission were to

investigate plaintiff's allegations and determine that the administrative respondents had acted

unlawfully, CDP would not learn any new factual information that is required to be disclosed.

In circumstances like this, where any information claimants purport to seek is already

available to them, those claimants lack standing to maintain their claims.  *See, e.g.*, *Judicial*

*Watch*, 293 F. Supp. 2d at 46-47 (holding that a plaintiff who had alleged reporting violations

regarding his own contributions to a candidate lacked standing because he was "already aware of the facts underlying his own alleged contributions" and his lawsuit was unlikely to produce additional facts of which he was not already knowledgeable); *CREW v. FEC*, 799 F. Supp. 2d 78, 88-89 (D.D.C. 2011) (holding that plaintiffs lacked a cognizable informational injury where they sought a legal determination that certain expenses were in-kind contributions but failed to "allege any specific *factual information* . . . that [wa]s not already publicly available"); *see also CREW v. FEC*, 475 F.3d 337, 339-40 (D.C. Cir. 2007) (holding that plaintiffs lacked standing in part because "any citizen who wants to learn the details of the transaction . . . can do so by visiting the Commission's website, which contains the [sought after] list and a good deal more").

A recent case highlights the difference between seeking missing factual information and simply seeking to have reported transactions reclassified.  In *Campaign Legal Center v. FEC*, the court found no informational injury and thus no standing as to complaints that amounted to efforts to have the FEC reclassify known, publicly reported contributions as illegal, that is, to have the FEC make legal determinations.  245 F. Supp. 3d 119, 125-26 (D.D.C. 2017).  By contrast, the court found that the plaintiff in that case *did* have standing to pursue other claims seeking the true sources of contributed funds that were required to be reported but were not in any conclusive, publicly available locations — where the plaintiff alleged that it simply did not know where the funds came from.  (*Id*. at 127.)  That is not the case here, where CDP does not allege that it completely lacks any such key information about the transactions at issue, only that the information has not been labeled correctly or has not been reported by every relevant entity.[2]

---

[2]     Here, CDP does allege that certain state party reports may fail to contain information about certain transactions, but CDP concedes that those transactions are reported on other reports.  For example, the court complaint points to a report from Hillary Victory Fund of a $19,500 transfer *to* the Mississippi Democratic Party and a report from the DNC on the same day of a $19,500 transfer *from* the Mississippi Democratic Party, but notes that the Mississippi

In this case, CDP may have a general interest in learning whether there was anything unlawful about the transfer of money amongst the administrative respondents, but CDP lacks standing to seek that information because there is no general statutory requirement that a violation of the Act be disclosed as such to the public.  CDP's desire "for the Commission to 'get the bad guys'" is not a legally cognizable interest, *Common Cause*, 108 F.3d at 418, and CDP has thus failed to plead or show any particularized injury sufficient to give it standing.

**2.      To the Extent CDP Does Seek Information, It Fails to Show that Such Information Would Be Useful in Its Voting**

Even if CDP's court complaint could be construed to have alleged violations of law that deprived it of information, CDP cannot show that any such information would be useful in its voting, as required to demonstrate informational injury sufficient to support judicial review under 52 U.S.C. § 30109(a)(8).  The Supreme Court has made clear that to constitute a legally cognizable injury for an action seeking review of an FEC dismissal, the information of which plaintiffs claim to have been deprived must be "directly related to voting."  *Akins*, 524 U.S. at 24-25.  The D.C. Circuit has similarly explained that a particularized informational injury is sufficient to create standing where plaintiffs have alleged that "voter[s] [were] deprived of useful [political] information at the time" of voting, *and* the denied information is "useful in voting and required by Congress to be disclosed."  *Common Cause*, 108 F.3d at 418 (citation omitted).  In addition, courts in this District have recognized that the sought-after information must "have a concrete effect on *plaintiffs'* voting," *i.e.*, that CDP (or its members if it were a membership organization) must be participants in political elections and campaigns.  *All. for Democracy*,

---

Democratic Party failed to report either of these transactions itself.  (Compl. ¶ 23.)  Although this suggests a possible reporting failure by the Mississippi Democratic Party, rectifying that alleged failure would not provide CDP with any information that it does not already have.

335 F. Supp. 2d at 48 (emphasis added); *see also CREW*, 475 F.3d at 339 (finding no standing based on informational injury in part because "CREW cannot vote [and] it has no members who vote."); *CREW*, 401 F. Supp. 2d at 121 ("[T]o withstand the rigors of Article III, an injury in fact must be suffered by the plaintiff or the plaintiff's members; one cannot piggyback on the injuries of wholly unaffiliated parties."). In this context, "the nature of the information allegedly withheld is critical to the [court's] standing analysis." *Common Cause,* 108 F.3d at 417; *CREW* 401 F. Supp. 2d at 120 ("The character of the information sought weighs heavily on the informational standing analysis." (citation omitted)).

In this case, CDP cannot allege that knowing the precise details of the transfers about which it complains would directly and concretely affect *its* voting, because CDP is neither a voter nor does the complaint indicate that it has voting members. And even if CDP had members who voted, the court complaint fails to explain how the information sought would be used to inform their voting choices. Neither the DNC nor any of the Democratic state parties is an officeholder or candidate for office, and there is no allegation in the complaint that Hillary Clinton intends to run for elected office again. In addition, there is no allegation in the complaint that anyone associated with CDP would vote differently depending on whether the specific transfers or reports were unlawful. Indeed, it seems highly unlikely that such information about Democratic party activities in 2016 would have any bearing on which candidate a hypothetical member of CDP would choose to support in the future.

While there would undoubtedly be some general public interest in a determination that the respondents CDP has identified may have violated the law, CDP must make a particularized showing of personal injury from the alleged FECA violations and the purported missing information in order to have standing. In *FEC v. Akins*, for example, the plaintiffs challenged the

FEC's dismissal of an administrative complaint that made numerous allegations about the failure of the American Israel Public Affairs Committee ("AIPAC") to register with the Commission as a "political committee" and "make disclosures regarding its membership, contributions, and expenditures that FECA would otherwise require."  524 U.S. at 13.  The plaintiffs, who opposed AIPAC, argued that "the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election."  *Id.* at 21.  The Court agreed that this injury was "concrete and particular." *Id.*  By contrast, in this case, details about the transfers amongst the administrative respondents are already public in reports to the FEC.  The complaint fails to show how any additional information about the conduct alleged here would be useful to CDP in voting, even if the group had members who voted, which it has failed to allege in any event.

In sum, although CDP is a political committee, it cannot vote and the complaint lacks any claim that CDP has members who vote.  CDP does not and cannot show that any information it might gain from the relief it seeks here would be useful in voting.  Thus, it cannot show injury.

**D.    CDP Lacks Standing for the Additional Reason that Its Programmatic Activities Are Not Directly and Adversely Affected by the Challenged Dismissal Decision**

In addition to lacking any legally cognizable informational injury, CDP cannot demonstrate standing in any representative or associational capacity.  CDP claims no members and is not a trade association; it is suing on its own behalf.  Therefore, it is required to allege a direct and adverse effect on specific programmatic concerns from the challenged dismissals to meet Article III's injury requirement.  CDP has failed to do so.  The complaint nowhere alleges

anything that could fairly be read to suggest that CDP's resources have been depleted.  Nor does CDP allege concrete and direct harm to its programmatic activities.[3]

"The injury in fact component of the standing inquiry is often difficult for organizational plaintiffs . . . to satisfy."  *CREW*, 401 F. Supp. 2d at 120.  If an organization has members or is a trade association, it may qualify for representative or associational standing on behalf of those members or constituents.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-44 (1977).  But as the D.C. Circuit has explained, where an organizational plaintiff brings suit on its own behalf, "it must establish 'concrete and demonstrable injury to the organization's activities — with [a] consequent drain on the organization's resources — constitut[ing] . . . more than simply a setback to the organization's abstract social interests.'"  *Common Cause*, 108 F.3d at 417 (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)); *see also id.* ("[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action."); *Akins v. FEC*, 101 F.3d 731, 735 (D.C. Cir. 1996) (en banc) ("[T]his type of injury is narrowly defined; the failure must impinge on the plaintiff's daily operations or make normal operations infeasible in order to create injury-in-fact."), *vacated on other grounds*, 524 U.S. 11 (1998).

This case is similar to *CREW*, 401 F. Supp. 2d 115, and for the very same reasons identified by the court in that case, plaintiff here has not suffered any injury to its programmatic activities.  In *CREW*, the district court found that the plaintiff non-profit organization had not

---

[3]      It is well established that resources expended on litigation cannot be deemed injury for Article III purposes.  "'An organization cannot . . . manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.'"  *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434 (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).  This position "would enable every litigant automatically to create an injury in fact by filing a lawsuit," and it "has been expressly rejected by the Supreme Court."  *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 799 n.2 (D.C. Cir. 1987) (citing *Diamond v. Charles*, 476 U.S. 54, 65 (1986)).

sufficiently identified any programmatic activities adversely affected by the Commission's dismissal of its administrative complaint.  *Id.* at 121.  Here, as in *CREW*, plaintiff has not "specified any programmatic concerns that have been concretely and directly impacted adversely by the FEC's actions," nor has CDP identified any "particular plan" for using any information it could obtain if it was to prevail in this action.  *Id*. at 122-23.  Moreover, while the court in *CREW* acknowledged "that it may be difficult to detail how information will be used when a plaintiff does not yet possess that information," here, as in *CREW*, "such hardship is not implicated [because CDP is] already privy to the information" about the transfers of funds that it alleges are unlawful.  *Id.*; *see supra* pp. 14-16.  CDP thus lacks any injury in fact that is "concrete," "distinct and palpable," and "actual or imminent."  *McConnell v. FEC*, 540 U.S. 93, 225 (2003) (citation and internal quotation omitted), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010).

In sum, CDP has failed to provide evidence of a concrete and particularized injury to any "discrete programmatic concerns" of CDP's, let alone demonstrate that the organization is being directly and adversely affected by its purported lack of information regarding the activity that is the subject of its administrative complaint.  This failure is an independent reason CDP cannot demonstrate Article III standing.

## III.    CONCLUSION

For all the foregoing reasons, plaintiff CDP lacks Article III standing and the Court should dismiss CDP's Complaint.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)          Harry J. Summers
Acting General Counsel                            Assistant General Counsel
lstevenson@fec.gov                                hsummers@fec.gov

Kevin Deeley                                      /s/ *Seth Nesin*
Associate General Counsel                         Seth Nesin
kdeeley@fec.gov                                   Attorney
                                                  snesin@fec.gov

June 22, 2018                                     FEDERAL ELECTION COMMISSION
                                                  1050 First Street NE
                                                  Washington, DC  20463
                                                  (202) 694-1650